H-K CORPORATION v. CHARLES W. CHANCE, SR.

No. 7415SC950

(Filed 5 March 1975)

1. **Partnership § 1— proof of partnership — credit applications**
    Credit applications signed by defendant's son showing defendant as a partner in the son's retail clothing business were inadmissible to show that defendant was a partner in the business since the extrajudicial statements of an alleged partner cannot be used against another to prove the existence of a partnership.

2. **Evidence § 29— credit reports — lack of authentication**
    Dun and Bradstreet reports, purportedly based on representations of defendant to the firm's investigator, were properly excluded where the investigator did not testify and the reports were not authenticated.

**3. Partnership § 1— no partnership in fact**

Evidence that defendant's son, with defendant's consent, paid for stock bought for a retail clothing store operated by the son with checks drawn on the bank account of a business operated by defendant was insufficient to establish that defendant was a partner in fact in the son's clothing business.

**4. Partnership § 1— no partnership by estoppel**

Plaintiff's evidence was insufficient to establish that defendant was a partner by estoppel in a retail clothing business operated by defendant's son where the evidence showed no representations made personally by defendant to plaintiff creditor and no expression of consent by defendant to his son that the son could represent him to be a partner. G.S. 59-46.

APPEAL by plaintiff from *Brewer, Judge*. Judgment entered 13 September 1974 in Superior Court, ALAMANCE County. Heard in the Court of Appeals 23 January 1975.

In its complaint plaintiff alleges that defendant is indebted to it in the sum of $5,527.91 for merchandise sold by plaintiff to defendant during the period from 2 February 1973 to 13 July 1973. The orders for the merchandise were placed by the defendant's son who was actively engaged in the operation of a retail clothing store, but plaintiff contends that the defendant and the son were operating as a partnership in fact or that, in the alternative, the acts and representations of the defendant and his son were sufficient to establish a cause of action against the defendant as a partner by estoppel.

At trial plaintiff offered into evidence the deposition of the defendant who therein testified that he had organized and operated Chance Construction Company as a sole proprietorship for some twenty years and brought his son into the business in early 1970, paying him a salary and promising him that he could have the business if he stayed for several years and worked. In July or August 1971, the son informed defendant that he wanted to leave the partnership to go into the retail clothing business. Defendant reluctantly consented, agreeing to furnish the money that his son needed as initial capital for the clothing store prior to his opening on 1 November 1971. Pursuant to this agreement, the son left the Chance Construction Company, and thereafter the defendant sold the assets of Chance Construction Company and used some of the proceeds of sale to establish a car wash business, which he operated under the name of C.W.C. Enterprises. The son began buying goods to stock his clothing store and paid for them, with the consent of

the defendant, by writing checks in the total sum of about $18,000.00 on the bank account of C.W.C. Enterprises. Defendant testified that his son was not a partner and owned no interest in C.W.C. Enterprises and that he (the defendant) was not a partner and owned no interest in his son's clothing store.

Plaintiff also offered into evidence a deposition of the defendant's son who admitted that he made and signed two credit applications (Exhibits 1 and 2), one dated 3 October 1971, and the other dated 8 November 1971, in which he claimed that defendant was a partner in the clothing store business and that the assets of this business included the assets of C.W.C. Enterprises.

The credit manager of plaintiff testified that Dun and Bradstreet reports (Exhibits 3 and 4) showing defendant to be a partner with his son in the clothing store business, influenced their decision to sell merchandise to the store.

The defendant's motion for directed verdict was allowed, and from the judgment dismissing the action, plaintiff appealed.

*Dalton and Long by W. R. Dalton, Jr., for the plaintiff.*

*Hemric and Hemric by H. Clay Hemric, Jr., for the defendant.*

CLARK, Judge.

Whether the action of the trial court in granting the defendant's motion for directed verdict is proper depends primarily upon the admissibility of the evidence offered by the plaintiff and excluded by the trial court.

[1] The plaintiff sought to introduce into evidence the two credit applications (Exhibits 1 and 2) made and signed by defendant's son showing the defendant as a partner in the retail clothing business; but the son testified that the defendant was not a partner, that this was his way of indicating his father's financial backing for the initial capital. The son was not a party to the action. The reports were properly excluded.

The extrajudicial declarations of an alleged partner cannot be used (except as against himself) to prove the existence of the partnership. 2 Stansbury's, N. C. Evidence, § 170 (Brandis rev. 1973). Such a writing may be admissible if made in the course of business, but only after it is shown *prima facie* where

there was a partnership. Here all oral testimony of both defendant and his son shows a denial of partnership status.

[2]   Plaintiff also sought to introduce into evidence the two Dun and Bradstreet reports (Exhibits 3 and 4), purportedly based on representations of defendant to an investigator for the firm. The alleged investigator was not a witness and defendant denied making such representations. The reports were properly excluded since they were not authenticated in any manner. See 2 Stansbury's, N. C. Evidence, § 195 (Brandis rev. 1973).

[3]   The exclusion of this evidence leaves no support to plaintiff's contention of a partnership in fact. The evidence is clear that the son left the Chance Construction Company partnership, which resulted in the dissolution under G.S. 59-59, and that C.W.C. Enterprises was not a successor partnership. The evidence that the son was authorized to write checks on the C.W.C. Enterprises account does not constitute, in the absence of other fundamental requisites, a partnership in fact.

[4]   Nor does the evidence support the plaintiff's contention that there was a partnership by estoppel. This State has adopted the Uniform Partnership Act, Article 2, Chapter 59, General Statutes of North Carolina. G.S. 59-46, entitled "Partner By Estoppel," provides in substance that where a person represents himself as a partner (or consents to another so representing him) he is liable to a person to whom the representation is made, who, in reliance thereon, gives credit to the actual or ostensible partnership; if the representation is made in a public manner, he is liable regardless of whether the representation was known to the person extending credit.

We do not find in the evidence any representations made by the defendant personally to third-party creditors, nor do we find from the evidence any expression of consent on the part of the defendant to his son that the son could represent him to be a partner; and since the Dun and Bradstreet reports were properly excluded from evidence, there is no evidentiary support of the plaintiff's contention that representations were made in a public manner. Under these circumstances, the evidence was not sufficient to warrant submitting the case to the jury upon the theory of partnership by estoppel.

The plaintiff's remaining assignments of error relate to the rulings of the court excluding testimony, and we find that

such testimony, if admitted, would not be sufficient to justify submitting the case to the jury and that such assignments of error are without merit.

Affirmed.

Chief Judge BROCK and Judge BRITT concur.