STATE OF NORTH CAROLINA v. ADRIAN DEVON MURRAY

No. COA02-157

(Filed 17 December 2002)

## 1. Possession of Stolen Property— identity of owner—sufficiency of evidence

The trial court did not err by refusing to dismiss a charge of felonious possession of stolen goods where the victim did not identify her automobile but a jury could reasonably conclude that the car found in defendant's possession belonged to her. Moreover, defendant did not object at trial and the evidence was properly considered when determining sufficiency of the evidence.

## 2. Attorneys— withdrawal—no motion—no ex mero motu duty

The court was not required to remove defense counsel ex mero motu from a possession of stolen goods trial where defense counsel informed the court that he had been removed in all of defendant's other pending cases but did not move to withdraw, and defendant made no request that his counsel be discharged.

## 3. Constitutional Law— right to testify—duty to inform

The trial court did not have an affirmative duty to ensure that a defendant had been adequately informed of his right to testify on his own behalf in a prosecution for possession of stolen goods.

## 4. Criminal Law— reopening evidence—postverdict

The trial court did not have the discretion to allow defendant to testify after a verdict of guilty of felonious possession of a

stolen car where defendant indicated that his counsel had not allowed him to testify and that he had evidence that he could not have stolen the car. Additional evidence must be introduced prior to entry of the verdict; moreover, the additional evidence in this case was irrelevant because it related to whether defendant could have stolen the car rather than the charged offense of possessing the stolen car.

## 5. Sentencing— habitual felon—indictment

Defendant's habitual felon indictment complied with the Habitual Felons Act and case law even though it predated the indictment for the underlying felony of which he was convicted where he was originally indicted for felonious larceny of a motor vehicle and as an habitual felon, later indicted for possessing the stolen vehicle, and convicted of felonious possession and for being an habitual felon. These was a pending prosecution to which the habitual felon proceeding was ancillary; moreover, defendant was tried for felonious possession and for being an habitual felon at the same session of criminal court by the same jury, and the jury returned verdicts on successive days.

## 6. Criminal Law— closing courtroom—defendant's threats

There was no plain error in the trial court closing the courtroom and telling spectators to leave after a defendant with a history of attempting to escape and of injuring law enforcement officials threatened to hurt someone in the courtroom and to have someone help him escape.

Appeal by defendant from judgment entered 29 August 2001 by Judge Kimberly S. Taylor in Davidson County Superior Court. Heard in the Court of Appeals 17 October 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Anne M. Middleton, for the State.*

*Brian Michael Aus, for defendant-appellant.*

CAMPBELL, Judge.

Adrian Devon Murray ("defendant") was indicted on 31 July 2000 for being an habitual felon and on 2 July 2001 on two counts of felonious possession of stolen goods. In August 2001, defendant was tried by a jury on the charges of felonious possession of stolen goods

and misdemeanor possession of stolen goods. After being convicted of both charges, defendant was found to be an habitual felon. Defendant appeals the final judgment pursuant to N.C. Gen. Stat. § 7A-27(b). On appeal, defendant argues that the trial court erred: I. In denying defendant's motion to dismiss due to insufficient evidence; II. In not discharging his defense counsel; III. By not inquiring of defendant whether his failure to testify was an intelligent, knowing and voluntary waiver of his right to testify in his defense; IV. By proceeding with the habitual felon phase when the habitual felon indictment predates the indictment for the predicate felony; V. By ordering closure of the courtroom; and VI. In sentencing defendant due to the incorrect dates on the judgment and commitment and not providing credit for time served. Upon review of the record, we find that the trial court committed no error as to its final judgment. Accordingly, we affirm the judgment of the lower court. We do, however, remand for correction of the clerical error noted below.

Through the testimony of the victims, Deborah Wall ("Ms. Wall") and Michelle Martin ("Ms. Martin"), the State's evidence showed the following. Ms. Wall, who is from Virginia, was visiting a friend in Thomasville, North Carolina on 27 May 2000. Ms. Wall parked her 1985 Chrysler New Yorker near the back door of her friend's house, where she spent the night. When she went outside the next morning, 28 May 2000, Ms. Wall saw that her car was missing and reported the theft of her car to the police. Then, on 29 May 2000, Ms. Martin, who lived in Greensboro, went out to her 1990 Suzuki Sidekick and noticed that it had been broken into and vandalized. Nearly $300 worth of textbooks and a black bookbag worth about $100 were missing from inside the car. In addition, the car stereo and ignition switch were broken and the interior passenger side door was torn. Ms. Martin reported the incident to the High Point Police.

On 31 May 2000, Officer Donnie Rowe ("Officer Rowe"), who was assigned to investigate Ms. Wall's stolen car responded to an area of Thomasville in reference to a report of a vehicle matching a description of Ms. Wall's stolen vehicle. Officer Rowe saw "a blue Chrysler with Virginia license plates" parked in front of Apartment L at a complex on Liberty Drive. The door to that apartment was open and "a black male [was] standing in front inside the [storm] door." Officer Rowe testified, "I had already confirmed that the vehicle was stolen. I set up on the vehicle and later when the black male got into the vehicle I stopped the vehicle down the street." Inside the car, the assisting officers found textbooks with "the name of Michelle Martin

[written] inside of the books." Officer Rowe "contacted [the] High Point Police Department and later it was confirmed that they had a breaking and entering into a motor vehicle prior to this and [the books] belonged to the victim out of High Point," Michelle Martin.

## I. Denying defendant's motion to dismiss

[1] Defendant first argues that the trial court's refusal to dismiss the charge of felonious possession of stolen goods was error since the victim of the larceny did not identify the stolen vehicle that was in defendant's possession. "In ruling upon a motion to dismiss, the trial court must determine if the State has presented substantial evidence of each essential element of the offense." *State v. Reid*, 151 N.C. App. 420, 565 S.E.2d 747 (2002) (citation omitted). "Whether the evidence presented is substantial is a question of law for the court." *State v. Siriguanico*, 151 N.C. App. 107, 564 S.E.2d 301 (2002) (citation omitted). "Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion." *State v. Robinson*, 355 N.C. 320, 336, 561 S.E.2d 245, 255 (2002), *cert. denied*, —— U.S. ——, 123 S. Ct. 488, —— L. Ed. 2d —— (2002) (citation omitted). When considering a criminal defendant's motion to dismiss, the trial court must view all of the evidence presented "in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence." *State v. Davis*, 130 N.C. App. 675, 679, 505 S.E.2d 138, 141 (1998) (citation omitted). The trial court correctly denies a motion to dismiss "[if] there is substantial evidence of every element of the offense charged, or any lesser offense, and of defendant being the perpetrator of the crime." *State v. Ramseur*, 338 N.C. 502, 507, 450 S.E.2d 467, 471 (1994) (citation omitted).

Applying this standard of review, we find that there exists substantial evidence of every element of felonious possession of stolen goods and that defendant was the perpetrator of the offense. Under N.C. Gen. Stat. § 14- 71.1, "[t]he essential elements of feloniously possessing stolen property are (1) possession of personal property, (2) valued at more than $400.00, (3) which has been stolen, (4) the possessor knowing or having reasonable grounds to believe the property to have been stolen, and (5) the possessor acting with a dishonest purpose." *State v. Davis*, 302 N.C. 370, 373, 275 S.E.2d 491, 493 (1981); *see* N.C. Gen. Stat. § 14-71.1 (2001). Defendant maintains that although Ms. Wall testified that her car was missing the morning after she parked it outside her friend's house in Thomasville and as to the

STATE v. MURRAY

[154 N.C. App. 631 (2002)]

value of her car being $1,995.00, she did not testify as to the color of her vehicle nor to any other identifying feature. Further, Officer Rowe's testimony that he confirmed with Ms. Wall that the Chrysler New Yorker he stopped was in fact her vehicle is inadmissible hearsay under N.C. Gen. Stat. § 8C-1, Rule 802. Therefore, no competent evidence exists to link defendant's possession of a blue 1985 Chrysler New Yorker to Wall's stolen vehicle.

Contrarily, the State argues that ample evidence existed from which a reasonable mind could infer that the car in defendant's possession was Ms. Wall's stolen vehicle. We agree. When viewed in the light most favorable to the State, a jury could reasonably conclude that the blue Chrysler New Yorker with Virginia plates found by Officer Rowe in defendant's possession belonged to Ms. Wall. In addition to testifying about his response to a sighting of the stolen car, Officer Rowe identified pictures of the blue Chrysler with Virginia plates that had been reported stolen and that defendant was driving. Moreover, our review of the transcript shows that defendant did not object to this testimony being admitted at trial and, therefore, it was properly considered in determining the sufficiency of the evidence. As this Court has held, "The [trial] court must consider all evidence which is admitted which is favorable to the State[.]" *State v. France*, 94 N.C. App. 72, 77, 379 S.E.2d 701, 703 (1989).

II. Not discharging the defense counsel

[2] According to the record, before defendant was brought in for his trial, defense counsel informed the trial court that he had been removed as counsel for this defendant in all other pending cases involving defendant. Further, defense counsel stated, "I was not allowed to be removed from this case." The trial court made no inquiry into the matter and defense counsel did not move to withdraw from this case. In fact, the record reflects that defendant was then brought into the courtroom and defense counsel proceeded with another motion concerning defendant's case. Defendant argues that the trial court should have removed defense counsel from representation in this case *ex mero motu* and pursuant to Rule 1.16 of the Revised Rules of Professional Conduct. We disagree. Nowhere in North Carolina case law or our general statutes do we find any law requiring that a trial court remove counsel in cases such as this where the defendant does not make such a request. Rule 1.16 does not apply as it refers to cases where a lawyer is discharged from a case by his client. The rule does not require a court to discharge an attorney from

all of a defendant's pending cases. Here, defendant made no motions prior to or during trial that his attorney be discharged. Defendant's reliance on *State v. Poindexter*, 69 N.C. App. 691, 318 S.E.2d 329, (1984), *cert. denied*, 312 N.C. 497, 322 S.E.2d 563 (1984) and *State v. McGee*, 60 N.C. App. 658, 299 S.E.2d 796 (1983) is misplaced as those cases involve situations highly unlike the one before us. We find defendant's contention to be without merit and, therefore, we overrule this assignment of error.

III. <u>Not inquiring of defendant regarding his failure to testify</u>

**[3]** At the close of the State's evidence, defense counsel indicated that no evidence would be offered by defendant. Defendant argues that the trial court erred by not asking defendant whether he wished to present evidence or testify on his own behalf. While we agree with defendant that a criminal defendant has a constitutional right to testify on his own behalf, we do not find that the trial court must initiate an inquiry into defendant's failure to testify. Although defendant cites ample authority regarding a defendant's right to testify, he fails to cite authority supporting his contention that a trial court has an affirmative duty to ensure that a defendant has been adequately informed of his right to testify on his own behalf. In *State v. Poindexter*, the defendant argued that the trial court erred in not informing him of his right *not* to testify under the fifth amendment. This Court held:

> The fifth amendment privilege, belatedly claimed by defendant, says no more than a person shall not be *compelled* to speak. It does not place upon the trial court the duty of informing a *pro se* defendant of his rights and privileges.

*Poindexter* at 694, 318 S.E.2d at 331. We find the *Poindexter* Court's analysis applicable here as defendant poses the same type of argument before us: that a trial court errs in failing to inform a criminal defendant of his constitutional rights. The Fourth Amendment to the United States Constitution and Article I, § 23 of the North Carolina Constitution provide a criminal defendant with the right to testify, but do "not place upon the trial court the duty of informing a *pro se* [or represented] defendant" of this right. *Id.*

**[4]** Furthermore, as did the defendant in *Poindexter*, defendant claims this constitutional right at a belated stage in the proceedings. After the jury returned the guilty verdicts, defendant, referring to his trial counsel, stated: "He wouldn't let me testify. He didn't go get the

evidence. There's a ticket in High Point proving that I couldn't steal that car, proving my innocence." Defendant argues that the trial judge should have treated defendant's post-verdict statements as a motion to reopen the evidence. We disagree. First, N.C. Gen. Stat. § 15A-1226 states: "The judge in his discretion may permit any party to introduce additional evidence at any time *prior to verdict*." N.C. Gen. Stat. § 15A-1226(b) (2001) (emphasis added). In fact, our state Supreme Court "has long recognized that the trial court has the discretion to allow either party to recall witnesses to offer additional evidence, *even after jury arguments*." *State v. Goldman*, 311 N.C. 338, 350, 317 S.E.2d 361, 368 (1984) (citation omitted) (emphasis added). Yet, the applicable statute and case law are clear that any additional evidence must be introduced prior to entry of the verdict. Since defendant's statements alluding to his wish to testify were made after the verdict, the trial judge had no discretion to consider allowing defendant's testimony. Secondly, assuming *arguendo* that the trial judge had the duty to inform defendant of his right to testify on his own behalf, such a failure was harmless error, as it does not have any reasonable possibility of affecting the outcome of the trial. Defendant's statements after the verdict indicated that he wished to testify as to evidence that he "couldn't steal that car." Defendant was charged with felonious possession of a stolen car, not with stealing the car. Thus, defendant's statement as to what he would testify is irrelevant to the offense with which he was charged and of which the jury found him guilty.

## IV. Proceeding with the habitual felon phase

**[5]** Defendant next assigns error to the trial court's proceeding with the habitual felon phase of the trial when the habitual felon indictment predates the indictment for the predicate felony. Thus, defendant argues, the habitual felon indictment is not ancillary to any predicate felony as required in *State v. Allen* because the habitual felon indictment predates the underlying felony for which defendant was convicted. In *Allen*, our Supreme Court held:

Properly construed [the Habitual Felons Act] clearly contemplates that when one who has already attained the status of an habitual felon is indicted for the commission of another felony, that person may then be also indicted in a separate bill as being an habitual felon. It is likewise clear that the proceeding by which the state seeks to establish that defendant is an habitual felon is necessarily ancillary to a pending prosecution for the "principal," or substantive, felony. The act does not authorize a proceeding

independent from the prosecution of some substantive felony for the sole purpose of establishing a defendant's status as an habitual felon.

*State v. Allen*, 292 N.C. 431, 433-34, 233 S.E.2d 585, 587 (1977). In this case, defendant was originally indicted for felony larceny of a motor vehicle and as an habitual felon. Because felonious possession of stolen goods turned out to be an easier offense to prove at trial, defendant was later indicted for possessing the stolen vehicle. Merely because these events caused the date on the habitual felon indictment to predate that on the substantive felony indictment does not mean that there did not exist a pending prosecution to which the habitual felon proceeding was ancillary. In fact, defendant was tried at the same session of criminal court by the same jury on the predicate felonious possession of stolen goods charge and then on the habitual felon charge. Our review of the record shows that on 28 August 2001, the jury entered a guilty verdict on the underlying felony and on 29 August 2001, the jury entered a verdict finding defendant to be an habitual felon. Thus, defendant's habitual felon indictment complies with the Habitual Felons Act set forth in N.C. Gen. Stat. § 14-7.1, as well as with *Allen*. This assignment of error is overruled.

V. Ordering closure of the courtroom

[6] We find no merit in defendant's argument that the trial court erred in telling unidentified spectators to leave and closing the courtroom due to defendant's threats. N.C. Gen. Stat. § 15A-1034 states: "The presiding judge may impose reasonable limitations on access to the courtroom when necessary to ensure the orderliness of courtroom proceedings or the safety of persons present." N.C. Gen. Stat. § 15A-1034(a) (2001). Contending that the disposition of criminal cases should be conducted before the public in open court, defendant argues that the trial court committed plain error by using broader limitations than necessary to protect the interest of public safety. *See State v. Moctezuma*, 141 N.C. App. 90, 96, 539 S.E.2d 52, 57 (2000). We find that the trial court's closing of the courtroom was a sound decision and one that had no effect on defendant's trial as it was done after the verdict was rendered. In no manner does the trial court's acting to protect spectators from defendant constitute plain error, where defendant threatened to hurt someone in the courtroom and to have someone help him escape and where defendant had a history of attempting to escape and injuring law enforcement officials. This assignment of error is overruled.

VI. <u>Incorrect dates on the judgment and commitment and not providing credit for time served</u>

Defendant fails to establish that he deserves credit for time served when, during trial, he was serving time for other offenses. Defendant correctly maintains, however, that the judgment in this matter contains clerical errors. The judgment should reflect the date of the offense of felonious possession of stolen goods on the indictment as amended according to the State's motion to amend. Likewise, the date on the habitual felon judgment should be corrected.

No error in the trial. Remanded for correction of clerical errors.

Judges WALKER and McCULLOUGH concur.